## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAREEL POINDEXTER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3071** |
| **DARREL VANNOY** | **SECTION: "S"(3)** |

## REPORT AND RECOMMENDATION

Petitioner, Sareel Poindexter, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On August 19, 2015, petitioner was convicted of distribution of cocaine under Louisiana law.[1] On September 30, 2015, he was sentenced to a term of twenty-five years imprisonment, and it was ordered that the first two years of that sentence be served without benefit of probation, parole, or suspension of sentence.[2] On September 16, 2016, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on September 6, 2017,[4] and refused to consider his application for reconsideration on October 29, 2018.[5]

While his application for reconsideration was still pending in the Louisiana Supreme Court, petitioner returned to the state district court to file an application for post-conviction relief on

---

[1] State Rec., Vol. 1 of 5, minute entry dated August 19, 2015; State Rec., Vol. 2 of 5, jury verdict form.
[2] State Rec., Vol. 1 of 5, minute entry dated September 30, 2015.
[3] State v. Poindexter, No. 2016 KA 0132, 2016 WL 4962780 (La. App. 1st Cir. Sept. 16, 2016); State Rec., Vol 3 of 5.
[4] State v. Poindexter, 224 So. 3d 982 (La. 2017); State Rec., Vol. 3 of 5.
[5] State v. Poindexter, 254 So. 3d 1215 (La. 2018); State Rec., Vol. 4 of 5.

February 27, 2018.[6]  That application was denied on October 9, 2018.[7]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on April 23, 2019,[8] and August 19, 2019,[9] and by the Louisiana Supreme Court on July 24, 2020.[10]

On November 11, 2020, petitioner filed the instant federal application seeking habeas corpus relief.[11]  On December 12, 2020, the state filed a response arguing that the application should be dismissed because (1) it was untimely, (2) petitioner failed to exhaust his remedies in the Louisiana state courts with respect to one of his claims, and (3) his claims have no merit.[12] Petitioner thereafter filed a reply.[13]

## I.  Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is generally required to bring his § 2254 claims within one (1) year of the date on which his

---

[6] State Rec., Vol. 3 of 5.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record in this instance, the Court has simply used the signature date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed.  See United States v. Minor, 582 F. App'x 315, 316 (5th Cir. 2014); Estes v. Boutté, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), adopted, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); Crochet v. Goodwin, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n.10 (E.D. La. Oct. 8, 2014); Thornton v. Terrell, Civ. Action No. 09-1631, 2009 WL 4855743, at *1 n.1 (E.D. La. Dec. 4, 2009).

[7] State Rec., Vol. 4 of 5, Judgment and Reasons for Judgment dated October 9, 2018.

[8] State v. Poindexter, No. 2019 KW 0186, 2019 WL 1783256 (La. App. 1st Cir. Apr. 23, 2019); State Rec., Vol. 5 of 5.

[9] State v. Poindexter, No. 2019 KW 0746, 2019 WL 3891476 (La. App. 1st Cir. Aug. 19, 2019); State Rec., Vol. 5 of 5.

[10] State v. Poindexter, 299 So. 3d 60 (La. 2020); State Rec., Vol. 5 of 5.

[11] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner placed his application in the prison mailing system on November 11, 2020.  See Rec. Doc. 1, p. 12

[12] Rec. Doc. 8.

[13] Rec. Doc. 9.

underlying state criminal judgment became "final." 28 U.S.C. § 2244(d)(1)(A).[14] With respect to

determining that date of finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging
> a state conviction begins to run on "the date on which the [state] judgment became
> final by the conclusion of direct review or the expiration of the time for seeking
> such review." 28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued
> relief on direct appeal through his state's highest court, his conviction becomes
> final ninety days after the highest court's judgment is entered, upon the expiration
> of time for filing an application for writ of certiorari with the United States Supreme
> Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's direct-review writ application

on September 6, 2017.[15]  However, as also noted, petitioner **then** filed an application seeking

reconsideration of that judgment.  In its response, the state argues that the application for

reconsideration is immaterial of the purposes of the federal limitations, noting that the Louisiana

Supreme Court refused to consideration the application based its court rule which states:

> An application for rehearing will not be considered when the court has merely
> granted or denied an application for a writ of certiorari or a remedial or other
> supervisory writ, or when the judgment of this court is merely overruling a motion
> to dismiss an appeal or a motion to recall or rescind a rule nisi, or when, for any
> reason, the judgment has not finally disposed of the case in this court, or when an
> election case has been decided as provided by Rule X, Section 5(c).

Louisiana Supreme Court Rule IX, § 6.

The state's argument is foreclosed by Wilson v. Cain, 564 F.3d 702 (5th Cir.  2009).  In

Wilson, the United States Fifth Circuit Court of Appeals observed:  "Louisiana courts do not

invariably apply Louisiana Supreme Court Rule IX, § 6 to procedurally bar motions for rehearing

---

[14] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events that can trigger a delayed
commencement of the statute of limitations in some circumstances, those alternative provisions are not applicable in
the instant case.
[15] State v. Poindexter, 224 So. 3d 982 (La. 2017); State Rec., Vol. 3 of 5.

where the LSC has merely granted or denied a writ application." Id. at 705. The Fifth Circuit therefore held:  "[S]ince the LSC has entertained motions for rehearing notwithstanding the language in Louisiana Supreme Court Rule IX, § 6, this rule does not prevent [a habeas petitioner's] motion for rehearing from being considered in determining the date his conviction became final." Id. at 706. Accordingly, the Fifth Circuit further held that if a petitioner timely filed his application for rehearing with the Louisiana Supreme Court, then his state criminal judgment on direct review is not considered "final" for federal habeas corpus purposes until ninety days after the Louisiana Supreme Court denies the application for rehearing. Id. at 707.

Because the state has neither challenged the timeliness of petitioner's application for reconsideration nor provided adequate records from which this Court could conclude that the application was untimely, the undersigned finds that petitioner's state criminal judgment did not become "final" under 28 U.S.C. § 2244(d)(1)(A) until **January 28, 2019**, i.e. ninety days after the Louisiana Supreme Court issued its judgment concerning the reconsideration application on October 29, 2018.[16]

Moreover, although the federal limitations period would normally then have commenced on that date of finality, it did not do so here because, **prior to the date his conviction became final** under 28 U.S.C. § 2244(d)(1)(A), petitioner filed for state post-conviction date. As a result of that filing, his federal limitations period was tolled while that state post-conviction application

---

[16] As noted, the Louisiana Supreme Court issued its judgment on October 29, 2018. State v. Poindexter, 254 So. 3d 1215 (La. 2018); State Rec., Vol. 4 of 5. Because the ninetieth day after that date fell on a Sunday, petitioner's limitations period did not commence until the following Monday, January 28, 2019. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

4

was "pending." See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Although the state district court denied post-conviction relief on October 9, 2018, the post-conviction application nevertheless remained "pending" for tolling purposes while petitioner continued to seek timely review of that denial at the higher levels of the state court system. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-72 (5th Cir. 2004).

The state argues in its response that petitioner's initial writ application challenging the district court's denial was timely not filed;[17] however, the Court of Appeal did **not** indicate in its opinions that it found either that application or petitioner's subsequent application to be untimely.[18] Therefore, the undersigned must assume that the Court of Appeal determined the applications were in fact timely and that tolling continued uninterrupted. See id. at 775 ("[W]hen the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions. Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion." (citations omitted)); see also Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009) ("While one could perhaps argue that the Fifth Circuit is too generous in its assumption that evident untimeliness is always noted without fail by the state courts, this Court may not unilaterally ignore the presumptions employed in Grillette.").

---

[17] Rec. Doc. 8, p. 6.
[18] See State v. Poindexter, No. 2019 KW 0186, 2019 WL 1783256 (La. App. 1st Cir. Apr. 23, 2019); State v. Poindexter, No. 2019 KW 0746, 2019 WL 3891476 (La. App. 1st Cir. Aug. 19, 2019); State Rec., Vol. 5 of 5.

Further, because the state does not argue that petitioner's subsequent related writ application was untimely filed with the Louisiana Supreme Court, the undersigned further finds that the federal limitations period therefore remained tolled until the Louisiana Supreme Court issued its judgment denying post-conviction relief on **July 24, 2020**.[19]

When the federal limitations period finally commenced on that date, petitioner then had one year in which to file his federal application. Because he filed his federal application less than four months later, it was timely filed.

## II. Exhaustion

The state next argues that petitioner failed to exhaust his remedies in the state courts with respect to the third claim listed in his federal application. It is black letter law that, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). For that requirement to be satisfied, a federal petitioner must have provided the state's highest court with "a fair opportunity to pass upon the claim" by presenting the claim to that court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988) (quotation marks omitted). In Louisiana, the highest state court is the Louisiana Supreme Court. See La. Const. art. V, § 5(A).

Moreover, it is clear that the exhaustion requirement must be met with respect to each and every claim in a petitioner's federal application. See Rose v. Lundy, 455 U.S. 509, 520 (1982)

---

[19] State v. Poindexter, 299 So. 3d 60 (La. 2020); State Rec., Vol. 5 of 5. A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

("[O]ur interpretation of §§ 2254(b), (c) provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken **each one** to state court." (emphasis added)). If a petitioner's federal application contains both exhausted and unexhausted claims, then the application is considered a "mixed" petition subject to immediate dismissal. See id. at 522 ("[B]ecause a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."); see also Pliler v. Ford, 542 U.S. 225, 230 (2004) ("Under Rose, federal district courts must dismiss mixed habeas petitions."); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice.").

Although the state is essentially arguing in this case that petitioner has filed a mixed petition, it failed to submit a complete copy of the **entire** state court record as would be necessary for this Court to adequately assess the validity of that defense. While the state has apparently furnished a copy of the state district court's record, it has not, contrary to this Court's briefing order,[20] furnished copies of the complete records from the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court. Being unable to review the state court record in its entirety, the undersigned declines to address the state's exhaustion defense and instead recommends that petitioner's claims simply be denied on the merits for the following reasons. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

---

[20] Rec. Doc. 3

State."); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998); <u>Melancon v. McCain</u>, Civ. Action No. 18-12754, 2020 WL 3259431, at *4 n.21 (E.D. La. Feb. 20, 2020), <u>adopted</u>, 2020 WL 3255150 (E.D. La. June 16, 2020).

### III.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002); <u>accord</u> <u>Langley v. Prince</u>, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court), <u>cert. denied</u>, 140 S. Ct. 2676 (2020).  The applicable standards of review are now as follows.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

In summary, "AEDPA prevents defendants – **and federal courts** – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

## IV.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> On June 13, 2013, several officers working with the Lafourche Parish Drug Task Force (LPDTF) used a confidential informant (CI) to conduct a controlled narcotics purchase from defendant. LPDTF officers gave the CI $40 to make the purchase and outfitted her vehicle with audio and video recording devices. The CI contacted defendant and arranged to meet him near his home in Morristown. Defendant entered the CI's vehicle and sold her a single rock of crack cocaine for $20.00. The CI testified at trial, identifying defendant and describing the circumstances of the transaction. Using the audio/visual recording, a LPDTF

officer who was familiar with defendant also identified him at trial. Defendant did not testify at trial.[21]

## V. Petitioner's Claims

## A. Forfeiture of Counsel

Petitioner's first claim is that "[t]he trial court violated petitioner's Sixth Amendment Right to Counsel when it forfeited such right and forced him to proceed pro se without giving any warning that alleged misconduct towards his court appointed attorney would result in him having to represent himself at trial."[22]

On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

[D]efendant argues the trial court erred in ruling that he forfeited his right to counsel and by then appointing defendant to represent himself.
    The record reflects that defendant's trial was scheduled to begin on Monday, August 17, 2015. On August 14, 2015, the parties appeared in court for a hearing on a motion to continue and on defense counsel, Wilbert Billiot's, motion to withdraw. Mr. Billiot first argued the motion to continue, which was based on defendant's desire to subpoena certain witnesses. The trial court found the motion meritless and denied it.[FN 2]

> [FN 2] Defendant does not explicitly challenge this ruling on appeal.

    The trial court then took up the matter of defense counsel's motion to withdraw, which defendant did not oppose. Mr. Billiot testified in support of his motion. Mr. Billiot stated that he had several conversations with defendant on the day before the instant hearing. In the first conversation, defendant told Mr. Billiot that he wanted to file a motion to continue so that he could make arrangements to have certain witnesses appear at trial. However, defendant could not provide Mr. Billiot with the witnesses' names, addresses, or a general indication of their testimony – information that was required to support the motion to continue.
    A second, brief conversation ended when Mr. Billiot had to ask defendant to call back at a later time. In a third conversation, defendant expressed concern that he had not been given information regarding the CI's identity in a timely manner. He also alleged that Mr. Billiot had colluded with the district attorney and the trial court to prevent disclosure of this information. Mr. Billiot explained that

---

[21] State v. Poindexter, No. 2016 KA 0132, 2016 WL 4962780 (La. App. 1st Cir. Sept. 16, 2016); State Rec., Vol. 3 of 5.
[22] Rec. Doc. 1, p. 5.

defendant had consented to waiving the date set for disclosure of this information in order for him to consider a plea offer. In this third conversation, defendant still did not provide Mr. Billiot with the information required to support the motion to continue.

At some point, defendant became irate and told Mr. Billiot, "If you don't make it so that I can get a continuance and subpoena these witnesses then I'm gonna f*** some people up" when I go into the courtroom.[FN 3] Mr. Billiot took this statement as a threat that was directed mainly toward him. Mr. Billiot then testified about what he perceived to be a prior threat defendant made to him. He described that there was previously an issue with defendant being transferred from federal to state custody. Defendant blamed Mr. Billiot for an apparent delay in his transfer, told Mr. Billiot he was not doing his job, and at the end of one conversation stated, "Mr. Billiot, don't make me have to send my brother." Mr. Billiot stated he believed this statement to be a threat that defendant would send his brother to "do some kind of harm to me," because defendant thought Mr. Billiot was not diligently representing him.

> [FN 3]  Mr. Billiot was unsure whether this threat was made during the third conversation or in a later phone call.

Mr. Billiot also described that he was also contacted by defendant's father on the day before the instant hearing. According to Mr. Billiot, defendant's father accused him of being unprepared for trial. Mr. Billiot particularly feared the fact that defendant had passed his contact information along to an unincarcerated third party.

Mr. Billiot testified that he did not believe he could further communicate with defendant in a proper attorney-client manner. He feared that defendant had the resources to carry out any threats he made, and he believed these threats completely impeded his proper performance as defendant's attorney. Mr. Billiot stated that, despite any efforts made by the trial court to ensure his safety in court, he believed the danger posed by defendant's threats existed "anywhere[,] anytime."

In granting Mr. Billiot's motion to withdraw, the trial court found Mr. Billiot's concerns to be sincere and his testimony to be credible and truthful. The trial court also noted that defendant did not refute any of Mr. Billiot's allegations. However, the trial court stated that the granting of the motion to withdraw did not mean defendant should be appointed new counsel. The trial court found that defendant had manipulated the system in an effort to postpone the matter and to obstruct the orderly procedure of the courts. The trial court concluded, "Whether or not [defendant] wanted to represent himself, he has forfeited his right to have the public defender represent him."

Subsequently, the trial court allowed defendant to testify regarding his education, legal training, and ability to defend himself and act as his own attorney. Defendant stated that he had quit school in the seventh grade, had no legal training, and had never before represented himself in a legal proceeding. He had no financial

ability to hire his own attorney. Defendant noted that he had no objection to the trial court appointing another attorney to represent him in these proceedings, but he would like the attorney to be able to familiarize himself with the case. Prior to this testimony, defendant was unequivocal that he wanted to be represented by counsel and did not want to represent himself.

Having heard defendant's testimony, the trial court ordered the public defender's office to provide a standby attorney to work with defendant, who was to represent himself. The trial court also explicitly ordered that this standby attorney meet with defendant over the weekend in order to prepare for trial on Monday, August 17, 2015.

Defendant appeared in court again on Monday, August 17, 2015. At that time, the appointed standby counsel, Craig Stewart, appeared and apologized for not "being in proper court attire." Mr. Stewart was apparently unaware that trial was scheduled to begin on this date or that he would actually appear before the court. During this proceeding, Mr. Stewart represented defendant in arguing a pro se motion to continue based on the same claims Mr. Billiot had previously argued regarding defendant's desire to subpoena certain witnesses. The trial court again denied the motion to continue. The trial court did, however, direct that subpoenas be issued to defendant's prospective witnesses.

The trial court then addressed the matter of defendant's representation. The State argued strongly that defendant should be forced to represent himself, and that Mr. Stewart's role should be limited to standby only and not as "some type of semi participant in this proceeding." The trial court noted its decision that defendant had forfeited his right to counsel was not "an effort to submarine him" and specifically noted defendant's desire to be represented. Mr. Stewart informed the court that defendant wanted him to serve as counsel for trial and unequivocally did not want to represent himself.

The trial court ultimately stated that it would be clear to the jury that defendant was representing himself, with the assistance of standby counsel. However, the trial court did note that it had in mind "an expanded role" for standby counsel and further concerns could be clarified the following morning, prior to voir dire.

On the morning of August 18, 2015, the parties again discussed the representation issue, looking for clarification as to Mr. Stewart's role. The trial court stated that defendant would ultimately decide how to use Mr. Stewart, and the court would not stymy Mr. Stewart if he was going to handle certain aspects of the case. The court did explain that it would be an "all in or all out thing when it comes to individual parts of the case," meaning that either defendant or Mr. Stewart could handle a particular witness or argument, but they would not both be allowed to question a particular witness or present a certain argument. Ultimately, Mr. Stewart handled all aspects of defendant's trial, from voir dire through closing arguments, with no attempt by defendant to represent himself. On at least two occasions, defendant was asked to – and did – confirm his satisfaction with Mr.

13

Stewart's representation.  Mr. Stewart also represented defendant at his post-trial motion and sentencing hearings.

… [D]efendant argues the trial court erred in finding that he forfeited his right to counsel and in ordering him to represent himself. …

The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Seiss, 428 So.2d 444, 447 (La. 1983). While the United States and the Louisiana Constitutions guarantee the right to counsel of choice in a criminal proceeding, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases.  State v. Leggett, 363 So.2d 434, 436 (La. 1978).  The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part.  State v. Lee, 364 So.2d 1024, 1028 (La. 1978).  Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the trial court's discretion. Leggett, 363 So.2d at 436.

We recognize that defendant's first attorney was allowed to withdraw three days prior to trial, not on the day of trial.  Nonetheless, the withdrawal was close enough to the beginning of trial to warrant scrutiny.

In allowing Mr. Billiot to withdraw, the trial court found Mr. Billiot's concerns to be sincere and his testimony to be credible.  Defendant did not dispute Mr. Billiot's claims regarding defendant's alleged threats, and he did not oppose the motion to withdraw.  Thus, the trial court was presented only with arguments and testimony in favor of allowing the withdrawal.

In U.S. v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995), the court concluded that a defendant who is abusive toward his attorney may forfeit his right to counsel at a hearing on a motion for new trial.  Similar to the facts of this case, the defendant in McLeod had been verbally abusive toward his attorney during a telephone conversation and threatened to harm him.  Though the court was concerned that the defendant had not been warned that his misbehavior might lead to pro se representation, it did recognize that he refused to take an oath at the hearing held on the motion to withdraw, so he was not allowed to testify.  Id. at 325-26.  At least one other federal court has held similarly, where the withdrawing attorney alleged that the defendant threatened to kill him, and the defendant failed to refute the allegation.  See U.S. v. Thompson, 335 F.3d 782, 785 (8th Cir. 2003), cert. denied, 540 U.S. 1134, 124 S.Ct. 1111, 157 L.Ed.2d 940 (2004) (finding the refusal to appoint substitute counsel did not constitutionally abridge defendant's right to be represented on appeal).

As in McLeod and Thompson, defendant here did not dispute the allegations that he had threatened Mr. Billiot.  Therefore, on the record before us, we cannot say that the trial court erred or abused its discretion in finding that defendant forfeited his right to counsel and in allowing Mr. Billiot to withdraw.  We do note that, unlike the defendants in McLeod and Thompson, defendant here was not

> forced to proceed pro se, but was instead appointed "standby" counsel in Mr.
> Stewart. Contrary to his label, Mr. Stewart participated ably and diligently in all
> aspects of defendant's trial. He exclusively questioned prospective jurors, made an
> opening statement, cross examined the State's witnesses, and presented a closing
> argument. Therefore, defendant's self-representation was in name only. The
> record reflects that the actual effect of Mr. Stewart's appointment was a substitution
> of counsel (i.e., Mr. Stewart stepped fully into Mr. Billiot's previous role).
> Defendant took no actions that could be construed in the nature of self-
> representation. As a result, defendant's … assignment of error is without merit.[23]

Without assigning reasons, the Louisiana Supreme Court then denied petitioner's related writ application.[24]

In his federal application challenging the state court decision, petitioner candidly concedes: "Petitioner submits that the United States Supreme Court has not addressed when a criminal defendant's manipulative and obstructive conduct during trial and post-trial proceedings amounts to a forfeiture or waiver of the right to counsel."[25] And that is precisely the reason he why cannot be granted federal habeas corpus relief based on this claim. As previously explained *supra*, on a mixed question of law and fact such as this, a federal court **must** defer to the state court's decision on the merits of such a claim **unless** that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Further, on that point, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court
> unreasonably applies this Court's precedent; **it does not require state courts to
> extend that precedent or license federal courts to treat the failure to do so as
> error. Thus, if a habeas court must extend a rationale before it can apply to
> the facts at hand, then by definition the rationale was not clearly established
> at the time of the state-court decision.** AEDPA's carefully constructed

---

[23] State v. Poindexter, No. 2016 KA 0132, 2016 WL 4962780, at *1-4 (La. App. 1st Cir. Sept. 16, 2016); State Rec., Vol. 3 of 5.

[24] State v. Poindexter, 224 So. 3d 982 (La. 2017); State Rec., Vol. 3 of 5.

[25] Rec. Doc. 1-1, pp. 15-16; see also Rec. Doc. 9, p. 10.

framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

White v. Woodall, 572 U.S. 415, 426 (2014) (emphasis added; citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

Because the United States Supreme Court has never held that a trial court is prohibited from finding that a defendant has forfeited his Sixth Amendment right to counsel by engaging in this type of behavior, the state court's conclusion that the right to counsel was forfeited in such circumstances simply cannot be said to be "an unreasonable application of, clearly established Federal law, **as determined by the Supreme Court of the United States**."  28 U.S.C. § 2254(d)(1) (emphasis added).  Therefore, the AEDPA requires this federal habeas court to defer to the state court decision and deny relief.

### B.  Absence of Faretta Warnings

Petitioner's second claim is that "he was entitled to a Faretta Warning regarding self-representation when the trial court forfeited his right to counsel under the Sixth Amendment"[26]

In the state post-conviction proceedings, the state district court denied that claim, holding:

> The trial court was not required to give a Faretta warning to petitioner regarding the perils and disadvantages of self-representation, since petitioner did not request to represent himself but had instead forfeited his right to counsel due to his own actions.  The Trial Court protected petitioner's rights by appointing "standby" counsel, which the Court of Appeal characterized as effectively a substitution of counsel.[27]

---

[26] Rec. Doc. 1, p. 6.
[27] State Rec., Vol. 4 of 5, Reasons for Judgment dated October 9, 2018, p. 2.

The Louisiana First Circuit Court of Appeal then likewise denied relief,[28] as did the Louisiana Supreme Court, which stated simply: "Denied. Applicant fails to meet his burden of proof post-conviction. La.C.Cr.P. art. 930.2. Applicant's excessive sentence and denial of counsel claims were fully litigated on appeal. La.C.Cr.P. art. 930.4(A)."[29]

In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held that a criminal defendant cannot be deprived "of his constitutional right to conduct his own defense" by being forced by a trial court "to accept against his will a state-appointed public defender." Id. at 836. The Supreme Court further explained:

> [I]n order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

Id. at 835 (citations and quotation marks omitted).

As the state court noted, Faretta is simply inapplicable here. Faretta requires that warnings must be given when a defendant voluntarily **waives** his right to counsel; it does not address what warnings, if any, must be given to a criminal defendant before a trial court finds that he has **forfeited** his right to counsel. Moreover, in any event, as the state court correctly noted, the purported forfeiture **was not actually enforced in this case**. Although the trial judge ruled that petitioner had forfeited his right to counsel; the judge did not in actuality follow through on that ruling. He appointed Craig Stewart to serve as petitioner's "standby counsel," and then, perhaps

---

[28] State v. Poindexter, No. 2019 KW 0746, 2019 WL 3891476 (La. App. 1st Cir. Aug. 19, 2019); State Rec., Vol. 5 of 5.
[29] State v. Poindexter, 299 So. 3d 60 (La. 2020); State Rec., Vol. 5 of 5.

reconsidering the harshness of his forfeiture ruling, the judge ultimately relented and in no way curtailed the scope of Stewart's actual role in handling the defense at trial.   Although Stewart apparently retained the misleading "standby counsel" appellation, Stewart did not fact simply "stand by" – on the contrary, he was permitted to function fully as petitioner's trial counsel, with petitioner taking no actions to represent himself at trial.

Based both on the fact that the instant case involved a forfeiture (rather than waiver) of counsel and the fact that, in any event, Stewart actually fully served as petitioner's counsel at trial, the state court's determination that <u>Faretta</u> warnings were not required simply cannot be said to constitute "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).   Therefore, again, the AEDPA requires this federal habeas court to defer to the state court decision and deny relief.

### C.  Ineffective Assistance of Counsel

Petitioner states his third and final claim as follows:

> Counsel could not be effective with such short notice.   Could not investigate, or come up with multiple strategies or talk to witnesses, or file proper motions. Counsel was brought on case as standby counsel the day of trial.   Never came to see me, or get file until trial date.   No time.[30]

In its response in this proceeding, the state argues that this claim "has never been presented for review to Louisiana state courts, either on direct or collateral review."[31]   Therefore, the state argues that "the claim remains unexhausted at the state court level. …   Because the petitioner has never presented his ineffective assistance of counsel claim for review in any Louisiana court, relief

---

[30] Rec. Doc. 1, pp. 7-8.
[31] Rec. Doc. 8, p. 7.

in this Court is unavailable under the AEDPA."[32]  Petitioner does not address that argument in his reply to the state's response.[33]  Nevertheless, regardless of whether this claim is exhausted, which is an issue this Court need not and does not reach, petitioner has not met his burden of proof to establish that the claim has merit.

The United States Supreme Court has set forth a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief on such a claim is required to show **both** that counsel's performance was deficient **and** that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of

---

[32] Id. at pp. 7-8.
[33] Rec. Doc. 9.

counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. When considering whether such prejudice occurred in a particular case, a court must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Here, because Stewart was appointed only days before trial, the Court will accept as a given that his time and opportunity for preparation and independent investigation was limited. However, that, alone, is not determinative on this issue, because "a short preparation time does not necessarily mean that counsel was ineffective." See United States v. Bertram, No. 92-1428, 1993 WL 67153, at *2 (5th Cir. Mar. 1, 1993). Similarly, "[t]hat counsel has spent only a short time with an accused … does not of itself establish ineffectiveness of representation." Howard v. Beto, 466 F.2d 1356, 1357 (5th Cir. 1972).

Moreover, even where petitioner can show that his counsel's preparation and investigation were deficient, that still is "only half the battle. To be entitled to relief, he must *also* prove that prejudice *actually resulted* from the purportedly inadequate preparation or investigation." Ross v. Vannoy, Civ. Action No. 16-2568, 2016 WL 4991537, at *6 (E.D. La. July 5, 2016), adopted,

2016 WL 4942846 (E.D. La. Sept. 16, 2016). That requires that he "point to evidence establishing that better preparation or more thorough investigation would have actually benefited the defense, for example by showing that exculpatory evidence existed and would have been revealed through additional efforts." Id. See also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005) (noting that petitioner "failed to show that he suffered prejudice from trial counsel's allegedly deficient investigation"); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (noting that petitioner "does not point to any evidence in the record" which supports his allegation that a more thorough investigation by counsel would have uncovered beneficial information); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009) ("[A] petitioner asserting a claim for inadequate investigation bears the burden to provide factual support as to what further investigation would have revealed."), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Petitioner has made no such showing here, and he cannot merely rely on his own bare speculation to meet his burden of proof. See, e.g., Cox v. Stephens, 602 F. App'x 141, 146 (5th Cir. 2015) (holding that "[b]are allegations" that counsel failed "to make an adequate investigation of potential witnesses" were insufficient to warrant relief); United States v. Lewis, 786 F.2d 1278, 1283 (5th Cir. 1986) ("Since Lewis has not pointed out any evidence which would have been produced by more thorough investigation, much less evidence that would be sufficient to undermine confidence in the outcome of the trial, no prejudice has been shown."); Ross, 2016 WL 4991537, at *6 (Noting that petitioner's "assertions were entirely speculative and unsupported by any evidence at all. Again, a petitioner cannot rely on such bare speculation to meet his burden of proof.").

Lastly, as to petitioner's contention that his counsel was ineffective for failing to "file proper motions," that contention fails because he has not specifically identified any necessary and meritorious motions that went unfiled. See, e.g., Lewis, 786 F.2d at 1283 n.4 ("Lewis has also claimed that [counsel] is to be faulted for filing an inadequate number of pretrial motions. … Lewis has not indicated how other motions would have led to a different result in his case. Counsel is not required to engage in the filing of futile motions. The filing of pretrial motions falls squarely within the ambit of trial strategy." (quotation marks omitted)); Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *12 (E.D. La. Oct. 6, 2016) (Petitioner must identify necessary motions that counsel failed to file; "bald and unsupported speculation" that such motions went unfiled "is clearly insufficient to meet a petitioner's burden of proof."), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016); Pichon v. Terrell, Civ. Action No. 11-615, 2012 WL 6569758, at *6 (E.D. La. Oct. 1, 2012) ("[B]ecause petitioner has not identified any other types of pretrial motions which purportedly should have been filed and shown that such motions would have been beneficial to the defense, he has failed to prove either that counsel performed deficiently in this respect or that prejudice resulted."), adopted, 2012 WL 6569802 (E.D. La. Dec. 17, 2012); Lindsey v. Travis, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any *meritorious* pretrial motions were abandoned or left unfiled. … He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Sareel Poindexter be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[34]

New Orleans, Louisiana, this _____1st_____ day of March, 2021.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[34] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

23